## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE HOMER LAUGHLIN CHINA
COMPANY and HLC HOLDING, INC.,

          Plaintiffs,

      v.

WILLIAMS-SONOMA, INC.,

          Defendant.

Civil Action No. _____

**ELECTRONICALLY FILED**

**JURY TRIAL DEMANDED**

### COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs The Homer Laughlin China Company (hereinafter "THLCC") and HLC

Holding, Inc. (hereinafter "HLC") (collectively hereinafter "Homer Laughlin"), by and through

their undersigned counsel, assert as follows for their Complaint for Injunctive Relief against

Defendant Williams-Sonoma, Inc. ("WS" or "Defendant"):

### PRELIMINARY STATEMENT

1.      Homer Laughlin brings this civil action against Defendant for injunctive relief as

well as money damages arising from (a) Defendant's activities constituting trademark

infringement and unfair competition under the Lanham Act and common law; (b) Defendant's

unjust enrichment as a result of its tortious conduct described herein; and (c) Defendant's

violations of both state and federal anti-dilution law.

### PARTIES

2.      Plaintiff THLCC is a Delaware corporation having its principal place of business

at 672 Fiesta Drive, Newell, WV 26050.

3.      Plaintiff HLC, the sole owner of THLCC, is a Delaware corporation having its

principal place of business at 672 Fiesta Drive, Newell, WV 26050.

4.      Upon information and belief, Defendant WS is a Delaware corporation with its principal place of business at 3520 VanNess Avenue, San Francisco, California 94109. WS has appointed Corporation Service Company, 2711 Centerville Road, Wilmington, Delaware 19808 as its agent for service of process.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this dispute under the Lanham Act pursuant to 28 U.S.C. § 1338.  The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendant has, among other things, engaged in unlawful conduct by operating retail stores in this judicial district and distributing catalogs into this judicial district.

## FACTUAL BACKGROUND

### The History of Homer Laughlin and Fiesta® Dinnerware

7.      Homer Laughlin was founded in 1871 by brothers Homer and Shakespeare Laughlin as a partnership to sell pottery ware from factories located in East Liverpool, Ohio, where the brothers lived.  The company opened a plant in Newell, WV in 1907 and moved its headquarters there in 1929.  For over 100 years, Homer Laughlin has produced high quality, American-made china and has provided tens of thousands of jobs to the people of the Ohio River Valley.  Today, Homer Laughlin is the largest company in the dinnerware industry that still manufactures its products in the United States.

8.      Homer Laughlin began selling Fiesta® Dinnerware following the annual Pottery and Glass Exhibit held in Pittsburgh, Pennsylvania in January 1936.  Fiesta® Dinnerware, which was re-introduced by Homer Laughlin in 1986, is among the most recognizable china in the world.  Fiesta® Dinnerware has an iconic status and claims thousands of collectors, dealers, students, and historians from around the world.  It is also the most collected dinnerware in the United States.

9.      Homer Laughlin both sells Fiesta® Dinnerware to consumers via retailers and sells Fiesta® Dinnerware to wholesalers.  Homer Laughlin also markets and sells its Fiesta® Dinnerware in the institutional and food services markets, including to hotel and restaurant chains. Fiesta® Dinnerware has an iconic status and claims thousands of collectors, dealers, students, and historians from around the world.  It is also the most collected dinnerware in the United States.

10.      For example, Fiesta® Dinnerware was the subject of a story on CBS Sunday Morning on March 25, 2012, in which it was called "an iconic piece of Americana."  See http://www.cbsnews.com/news/celebrating-fiesta-dishes/.

11.      In addition, the Fiesta® Dinnerware design, which was developed by Frederick Rhead, was chosen as one of twelve "Pioneers of American Industrial Design" for a 2011 United States Postal Service Forever stamp series.  A true and correct copy of the series is attached hereto as **Exhibit A** and incorporated herein by reference.

12.      Fiesta® Dinnerware is in the Smithsonian National Museum of American History as one of fifteen exemplars of "Everyday Life" in America.  See http://www.smithsonianlegacies.si.edu/objectdescription.cfm?ID=223, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

13.    Fiesta® Dinnerware also appears in the book entitled "Icons of the American Marketplace," true and correct copies of which are attached hereto as **Exhibit C** and incorporated herein by reference.

14.    Fiesta® Dinnerware was also the topic of an episode of "Made in America" on the Travel Channel in 2007, and has appeared in a number of popular movies and TV shows, including the 1983 holiday film "A Christmas Story" and TV shows Modern Family, Two and a Half Men, The Big Bang Theory, The Mentalist, Breaking Bad, Home Improvement, Frasier, The Walking Dead, and Buffy, the Vampire Slayer.

15.    Homer Laughlin both sells Fiesta® Dinnerware to consumers via retailers and sells Fiesta® Dinnerware to wholesalers.  Homer Laughlin also markets and sells its Fiesta® Dinnerware in the institutional and food services markets, including to hotel and restaurant chains.

16.    The casual dinnerware market is highly competitive, with most casual dinnerware place settings costing between approximately $12 and $25 per set.

**Homer Laughlin Has Spent and Continues to Spend Considerable Time, Effort, Funds and Resources In Developing the FIESTA® Brand at Issue in This Action**

17.    Homer Laughlin owns and uses its famous FIESTA® trademark on a wide range of goods and services.  Initially used in connection with the iconic Fiesta® Dinnerware, the FIESTA® trademark has also been used in connection with flatware, utensils, beverage glassware, textiles, aprons, curtains and retail store services.  Homer Laughlin owns and maintains the following federal trademark and service mark registrations for the FIESTA® trademark, copies of which are attached as **Exhibit D**:

| Mark | Registration No. | Goods |
|------|------------------|-------|
| FIESTA | 1,725,751 | Full line of china dinnerware |

| Mark | Registration No. | Goods |
|------|------------------|-------|
| FIESTA | 1,766,472 | Metal flatware; namely, knives, forks and spoons; <br><br> Serving utensils; namely, serving spoons, slotted serving spoons, serving forks and pastry servers |
| FIESTA | 2,458,681 | Salad utensils, namely, spoons, forks <br><br> Beverage glassware, serving platters, salad bowls, serving trays not of precious metal, carafes, drinking glasses <br><br> Textile placemats, textile napkins, tablecloths and runners not of paper, towels, potholders, oven mitts <br><br> Rugs |
| FIESTA & Design | 3,528,084 | Flatware, namely, forks, spoons, knives <br><br> Dinnerware; beverage glassware; casseroles; bowls; vases; pie pans; pitchers; carafes; trays, not of previous metal; salt and pepper shakers; teapots; candlestick; sugar basins; cream pitchers; sugar packet holder; servingware for serving food; salad serving spoons; salad serving forks; serving platters; cake server; pie server; trivet <br><br> Textile placemats, textile napkins, textile tablecloths, fabric table runners, fabric valences, curtains, towels, potholders, oven mitts. <br><br> Aprons. |
| EVERYTHING FIESTA | 3,248,541 | Retail outlets featuring china dinnerware, linens, glassware, flatware and candles |
| FIESTA | 4,667,801 | Curtains |

| Mark | Registration No. | Goods |
|---|---|---|
| FIESTA & Design | 4,580,320 | Salad utensils, namely, spoons; hand tools, namely, tongs, Blending Forks, Cheese Slicers, Cheese Planes, Pizza Cutters, Cutlery, Boxes specially adapted for the storage of cutlery and flatware; cake knives |
| | | Salad Bowls, Drinking Glasses; Serving Utensils, namely, lasagna servers, Serving Spoons, cake servers, pie servers, Napkin Holders, Kitchen Ladles, Ice Cream Scoops, Candle Holders not of Precious Metal, Thermal Insulated Containers for Beverages for domestic use, Ice Buckets; Barware for household use, namely, strainers, bottle openers, corkscrews, jiggers, all sold as a unit; slotted spoons |
| FIESTA | 4,585,811 | Hand Tools, namely, tongs, Blending Forks, Cheese Slicers, Cheese Planes, Pizza Cutters, Cutlery, Boxes specially adapted for the storage of cutlery and flatware. |
| | | Casseroles, Bowls, Vases, Pie Pans, Pitchers, Salt and Pepper Shakers, Teapots, Candlestick, Sugar Basins, Cream Pitchers, Sugar basins in the nature of a holder for sugar packets, Servingware for serving food, Cake Server, Pie Server, Trivet, Napkin Holders, Kitchen Ladles, Ice Cream Scoops, Candle Holders not of Precious Metal, Thermal Insulated Containers for Beverages for domestic use, Ice Buckets; Barware for household use, namely, strainers, bottle openers, corkscrews, jiggers, all sold as a unit. |

18.     As federal registrations, all of these U.S. Trademark Registrations are presumed to be valid. Moreover, because of Homer Laughlin's continuous and exclusive use of the FIESTA® trademark, U.S. Trademark Registrations Nos. 1,725,751; 1,766,472; 2,458,681; 3,528,084 (except as to curtains); and 3,248,541 have achieved incontestable status.

19.     Homer Laughlin has spent substantial time, monies and resources promoting the FIESTA® trademark and the goods sold and services provided thereunder through, *inter alia*, product catalogs and other advertisements.

20.     As a result of this marketing and promotion, the FIESTA® trademark has acquired further distinctiveness and substantial and valuable goodwill exists throughout the United States for the Fiesta® trademark.

21.     The Fiesta® trademark is well-known in the industry and has become famous, due to its longevity and popularity.

**Defendant Unfairly Competes With Homer Laughlin**

22.     Defendant has produced and distributed nationwide and in this judicial district a June 2015 catalog titled "Bright Colors, Bold Flavors". A copy of that catalog is attached hereto as **Exhibit E**. In addition, Defendant has posted a copy of the catalog on its website at http://www.williams-sonoma.com/pages/ecatalog-ws-2015-06.html.

23.     Beginning on page 3 and continuing through page 11, the Bright Colors, Bold Flavors catalog uses the heading "FIESTA FAVORITES" to denote the dinnerware, flatware, cookware, glassware, and utensils displayed and offered for sale on those pages.

24. In addition to the unauthorized use of the FIESTA® trademark in the Bright Colors, Bold Flavors catalog, Defendant has also deployed the mark to its social media sites. Defendant's Facebook page makes use of the FIESTA mark (See, for example, https://www.facebook.com/events/305514039604029/). Moreover, the FIESTA® trademark has been picked up by online retailers such as LOZO who have used the mark in connection with Defendant's products (See, for example, http://lozo.com/groceries-food/57856-williamssonoma-20-off-fiesta-favorites).

25.     Through the promotion of such products using the FIESTA FAVORITES mark, Defendant is deceiving the public by suggesting a connection with or sponsorship by Homer Laughlin.

26.     On May 5, 2015, Homer Laughlin, through counsel, sent a letter to Defendant concerning the unauthorized use of the FIESTA® trademark.  A copy of that letter is attached as **Exhibit F**.  Defendant replied on May 19, 2015 denying that its appropriation of the FIESTA® trademark was a trademark violation.  A copy of that response is attached as **Exhibit G**.  Homer Laughlin replied on May 27, 2015 in an effort to provide Defendant a further opportunity to correct its misappropriation of the FIESTA® trademark.  A copy of that reply is attached as **Exhibit H**.  To date, Defendant has chosen not to take advantage of that opportunity.

27.     Upon information and belief, Defendant's unauthorized use of the FIESTA® trademark is willful and intentional.

28.     Defendant's attempts to sell its products to the consuming public using the FIESTA® mark, when in fact those goods are not Homer Laughlin products, are intended to deceive, and in fact actually deceive, the public into believing that Defendant's products are manufactured, licensed or authorized by Homer Laughlin.

### Irreparable Harm and Other Damages

29.     Unless and until Defendant is enjoined from infringing upon or otherwise using Homer Laughlin's FIESTA® trademark, Homer Laughlin is being irreparably harmed as follows:

   a) Public confusion as to the source of the products bearing the FIESTA® trademark;

b) Confusion of, and damage to, customers who intend to do business with Homer Laughlin and to purchase Fiesta® branded products, but are instead provided with products that are not Homer Laughlin products or their equivalent;

c) Damage to customer goodwill, trust, and confidence in Homer Laughlin and a diminution in the satisfaction and expectations of its customers;

d) Disturbance of Homer Laughlin's relationships with its customers;

e) Damage to Homer Laughlin's business reputation;

f) The potential for warranty and/or other claims being filed against Homer Laughlin as a result of the defective performance of Defendant's products;

g) Dilution of the FIESTA® trademark; and

h) Dilution of the value of Homer Laughlin as a whole.

30.    Moreover, if Defendant is permitted to continue to unfairly compete with Homer Laughlin, this will establish a precedent and potentially encourage others persons or entities to engage in the same conduct, thereby causing an irreparable loss of customer goodwill associated with the Trade Dress and the products sold thereunder.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER
## SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

31.    Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 30 of the Complaint as if each was set forth herein.

32.    Defendant is in the business of selling the products described herein and represented in **Exhibit E**.

33.     Defendant uses the FIESTA® trademark in connection with products sold or offered to the public which products are similar to products offered for sale by Homer Laughlin in connection with its FIESTA® trademark.

34.     Defendant's use of the FIESTA® trademark in connection with such products is likely to cause confusion, or to cause mistake or to deceive the consuming public into believing that the products offered by Defendant are approved, authorized and/or licensed by Homer Laughlin.

35.     Defendant's conduct has resulted and will continue to result in the loss of Homer Laughlin's goodwill, and has caused and will continue to cause Homer Laughlin irreparable injury.

36.     Unless enjoined by this Court, Defendant's acts will continue to irreparably damage Homer Laughlin by causing losses of sales, profits, business, reputation, and goodwill, which losses are impossible to accurately calculate.  Thus, Homer Laughlin has no adequate remedy at law.

## COUNT II

### UNFAIR COMPETITION UNDER
### SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

37.     Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 36 of the Complaint as if each was set forth herein.

38.     Defendant is in the business of selling the products described herein and represented in **Exhibit E**.

39.     The continued use of Homer Laughlin's FIESTA® trademark in the sale of goods by Defendant is likely to cause mistake and confusion in the marketplace and to cause purchasers to believe that Defendant's goods are those of Homer Laughlin.

40. The use by Defendant of the FIESTA® trademark in the sale of its goods constitutes unfair competition under the Lanham Act.

41. Defendant is deliberately attempting to trade upon the goodwill of Homer Laughlin by selling and advertising and/or intending to sell and advertise its goods as the goods of Homer Laughlin. Potential and actual consumers, as well as the public at large, are likely to believe, and likely to be deceived into believing, that the products offered by Defendant are approved, authorized and/or licensed by Homer Laughlin.

42. The conduct of Defendant constitutes fraud and deceit upon the consuming public of the United States.

43. Said conduct has resulted and will continue to result in the loss of Homer Laughlin's goodwill, and has caused and will continue to cause Homer Laughlin irreparable injury.

44. Unless enjoined by this Court, Defendant's acts will continue to irreparably damage Homer Laughlin by causing losses of sales, profits, business, reputation, and goodwill, which losses are impossible to accurately calculate. Thus, Homer Laughlin has no adequate remedy at law.

## COUNT III

## PENNSYLVANIA UNFAIR COMPETITION

45. Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 44 of the Complaint as if each was set forth herein.

46. Defendant's use of the FIESTA® trademark is likely to cause mistake and confusion in the marketplace and to cause purchasers to believe that Defendant's goods are those of Homer Laughlin. Potential and actual consumers, as well as the public at large, are likely to

believe, and likely to be deceived into believing, that the products offered by Defendant are approved, authorized and/or licensed by Homer Laughlin.

47.     Defendant is therefore unnecessarily creating confusion between Homer Laughlin's goods and its goods.

48.     Defendant's conduct further creates the impression that Homer Laughlin is responsible or accountable for the quality of the goods sold or offered for sale by Defendant. Defendant's conduct also harms the value of the FIESTA® trademark and the value of Homer Laughlin's reputation for dinnerware products of the highest quality, a value acquired by Homer Laughlin as a result of its substantial expenditure of money, effort and service to customers.

49.     Defendant's conduct as described above constitutes unfair competition in violation of the common law of the Commonwealth of Pennsylvania.

50.     Defendant committed the acts described with notice of Homer Laughlin's rights and with the intent to cause confusion, mistake and deception on the part of the consuming public.

51.     Unless enjoined by this Court, Defendant's acts will continue to irreparably damage Homer Laughlin by causing losses of sales, profits, business, reputation, and goodwill, which losses are impossible to accurately calculate.  Thus, Homer Laughlin has no adequate remedy at law.

## COUNT IV

## UNJUST ENRICHMENT/QUANTUM MERUIT

52.     Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 51 of the Complaint as if each was set forth herein.

53.     Defendant has misused the FIESTA® trademark to derive personal profit and otherwise has been enriched as a result of the benefits and goodwill which flow from the FIESTA® trademark.

54.     It would be unjust for Defendant to retain the profits, gains, and other benefits that it has derived from its illegal use of the FIESTA® trademark.

55.     Defendant should be required to pay to Homer Laughlin the value of the benefits gained through the unauthorized and illegal use of the FIESTA® trademark.

### COUNT V

### DILUTION UNDER FEDERAL LAW

56.     Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 55 of the Complaint as if each was set forth herein.

57.     Homer Laughlin's FIESTA® trademark is famous.  Defendant's use of the FIESTA® trademark has and will continue to dilute the distinctiveness of and tarnish Homer Laughlin's famous FIESTA® trademark in violation of the Federal Dilution Act, 15 U.S.C. § 1125(c).

### COUNT VI

### DILUTION UNDER PENNSYLVANIA LAW

58.     Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 57 of the Complaint as if each was set forth herein.

59.     Defendant's use of Homer Laughlin's FIESTA® trademark has and will continue to dilute the distinctiveness of and tarnish Homer Laughlin's famous FIESTA® trademark  in violation of the anti-dilution law of the Commonwealth of Pennsylvania, 54 Pa. Cons. Stat. Ann. § 1124.

## PRAYER FOR RELIEF

WHEREFORE, Homer Laughlin demands that judgment be entered in its favor and against Defendant with respect to all Counts as follows:

1.      That Defendant be adjudged to have violated 15 U.S.C. § 1114, 15 U.S.C. § 1125(a),  15 U.S.C. § 1125(c), 54 Pa. Cons. Stat. Ann. § 1124, and Pennsylvania common law;

2.      That Defendant be ordered to destroy all catalogs bearing the FIESTA® trademark  and to immediately remove all such catalogs from its website catalog archive;

3.      That Defendant be ordered to destroy all products bearing the FIESTA® trademark;

4.      That Defendant be permanently enjoined from infringing Homer Laughlin's FIESTA® trademark;

5.      That Defendant be permanently enjoined from effecting assignments or transfers, or forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction;

6.      That Defendant be permanently enjoined from manufacturing, having manufactured, selling, distributing, and marketing products bearing marks which infringe upon the FIESTA® trademark;

7.      That Defendant be required to recall any and all advertisements, product catalogs, or marketing materials which infringe upon the FIESTA® trademark within thirty (30) days of this Court order;

8.      That Defendant be permanently enjoined from creating, printing, and disseminating any new advertisements, product catalogs, or marketing materials which infringe upon the FIESTA® trademark;

14

9.     That Defendant be required to remove all references to the FIESTA® trademark, including any use in a tag line, from any website maintained by Defendant within ten (10) days of this Court's order;

10.     That Defendant be required to instruct all of its customers to cease marketing and/or selling the infringing products;

11.     That, upon the entry of a permanent injunction, Defendant be required to contact every customer that has received a product catalog or other advertisement from Defendant in order to inform such customers that (a) it (Defendant) is not a Homer Laughlin representative and is not authorized to sell Homer Laughlin products, and (b) that the products offered by Defendant are not Homer Laughlin products.  Defendant shall copy counsel for Homer Laughlin on each and every correspondence to this effect;

12.     That Defendant be required to make a verified report to the Court within thirty (30) days setting forth all actions taken by Defendant to comply with this Court's injunction and the dates of such actions;

13.     That, upon the entry of a permanent injunction, Defendant be required to provide an accounting of all sales, revenues and fees received by them for products distributed, marketed or sold by them (and the receipts, gross profits and expenses relating thereto) using Homer Laughlin's FIESTA® trademark from the date of first use by Defendant of such trademark until disassociation is complete;

14.     That Homer Laughlin be awarded damages in the amount of Defendant's profits, gains or advantages of any kind resulting from Defendant's unfair competition;

15.     That Defendant be required to pay damages to Homer Laughlin for injuries in excess of $75,000 sustained by Homer Laughlin as a result of Defendant's dilution of Homer Laughlin's FIESTA® trademark;

16.     That all damages under the Lanham Act be trebled;

17.     That Defendant be directed to pay all of Homer Laughlin's costs connected with this action, including reasonable attorneys' fees, filing fees and other costs as authorized by the Lanham Act; and

18.     That Homer Laughlin be given such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues properly triable to a jury in this case.

DATED: September 15, 2015         **BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Erin Lucas Hamilton*
Charles B. Gibbons (PA ID # 08284)
Michael L. Dever (PA ID # 46194)
Erin Lucas Hamilton (PA ID # 93852)
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219
charles.gibbons@bipc.com
michael.dever@bipc.com
erin.hamilton@bipc.com
Telephone:  (412) 562-8800
Fax:  (412) 562-1041

OF COUNSEL:

Andrew J. Cornelius (PA ID # 30213)
**ANDREW J. CORNELIUS, P.C.**
305 Mt. Lebanon Boulevard, Suite 205
Pittsburgh, PA 15234
acornelius@ajciplaw.com
Telephone:  (412) 571-9552
Fax:  (412) 571-9553